

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AES/DGR/DAS
F. #2016R00467

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 24, 2021

<u>By ECF</u>

The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Ng Chong Hwa</u>
     <u>Criminal Docket No. 18-538 (S-1) (MKB)</u>

Dear Chief Judge Brodie:

   As directed by the Court's March 17, 2021 Order, the government writes in response to the letter motion filed by counsel to Mohd Najib Bin Abd Razak ("Razak") on March 14, 2021, seeking to intervene in the above-captioned case.[1]  <u>See</u> ECF No. 65 (the "Motion to Intervene").  For the reasons discussed below, the Motion to Intervene should be denied.

  I. <u>The Motion to Intervene Has No Legal Basis</u>

   "The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case."  <u>United States v. Aref</u>, 533 F.3d 72, 81 (2d Cir. 2008).  Nonetheless, "[i]nterventions in criminal matters have been granted in limited circumstances where a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case."  <u>United States v.</u>

---

[1] Razak is a Malaysian citizen and resident who previously served as the Prime Minister of Malaysia from April 2009 to May 2018 and who is currently facing criminal charges in Malaysia for his role in the 1Malaysia Development Berhad ("1MDB") bribery and money laundering scheme.  He has commenced a civil action in the Southern District of New York in which he has filed a motion pursuant to 28 U.S.C. § 1782 for documents and testimony from Goldman Sachs and Tim Leissner.  <u>See</u> <u>Mohd Najib Bin Abd Razak v. Timothy Leissner and Goldman Sachs</u>, Docket No. 20 Misc. 387 (JGK) (KHP) ("<u>Razak</u>").  The government has moved to intervene in that matter and stay the proceedings.

Sikes, 2016 WL 6495500, at *1 (D. Neb. Nov. 2, 2016) (internal quotation marks omitted); accord United States v. Carmichael, 342 F. Supp. 2d 1070, 1072-73 (M.D. Ala. 2004). For example, intervention has been permitted in criminal cases in this Circuit where the movant "assert[s] the public's First Amendment right of access to criminal proceedings," Aref, 533 F.3d at 81,[2] or seeks a protective order to prevent disclosure of privileged materials, see United States v. Martoma, 962 F. Supp. 2d 602, 605 (S.D.N.Y. 2013) (citing United States v. RMI Co., 599 F.2d 1183, 1186 (3d Cir. 1979)).

Razak's request—which lacks even one citation to precedent—does not fall into any of the recognized categories where intervention is appropriate in a criminal case. While there is precedent for third-party intervention to prevent disclosure, Razak cites no authority for allowing intervention to permit disclosure of materials under a protective order. See Sikes, 2016 WL 6499500, at *2 ("[The proposed intervenor] has not cited, and the court has not found, any case permitting a private party to intervene in a criminal case to oppose a protective order and eliminate that impediment to discovery in a civil case."); United States v. Collins, 2013 WL 4780927, at *2 (E.D. Wis. Sept. 5, 2013) (denying a third party's motion to intervene where he sought "offensive intervention for the purpose of obtaining discovery" rather than "defensive intervention to prevent the disclosure of confidential information" (emphasis in original)). Given the absence of any precedential authority or legal support for the ultimate relief Razak seeks, the Motion to Intervene should be denied.

Nor can Razak point to a constitutional or other federal right that would be vindicated by granting the Motion to Intervene. His request for discovery in a civil matter under 28 U.S.C. § 1782 is a matter of judicial discretion, not a federal right. See, e.g., Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). And as Razak concedes, he is a foreign litigant seeking information for use in proceedings in a foreign country. See ECF No. 65 at 2. As such, he is not entitled to materials for those proceedings under the Federal Rules of Criminal Procedure or Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, which safeguard the rights of a defendant on trial in the United States. In fact, not only is Razak not entitled to such materials, but granting him access under these circumstances would be "unprecedented and entirely unnecessary . . . [and] beyond the inherent powers of the court." United States v. Moussaoui, 483 F.3d 220, 237 (4th Cir. 2007) (holding that the district court

---

[2] For example, related to the instant case, The New York Times Company (the "Times") sought to intervene in the criminal case against Leissner for the limited purpose of seeking to unseal a redacted version of the transcript of Leissner's guilty plea, and the government did not object to that motion to intervene (though it did object to the substantive relief sought by the Times). See In re New York Times Motion for Intervenor Status, Docket No. 19-mc-1133 (MKB), ECF Nos. 2, 9 (E.D.N.Y.). Notably, the Times' motion to intervene was premised on the "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents," Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006), such as the transcript of a court proceeding, see United States v. Haller, 837 F.2d 84, 87 (2d Cir. 1988). Here, by contrast, and as detailed herein, Razak is not seeking access to judicial documents, but to documents that are not a part of the court record and were provided to the defendant pursuant to a protective order.

abused its discretion by allowing third-party victims to intervene in a criminal process to obtain non-public discovery from the government).

By moving to intervene from abroad in order to obtain discovery for the Malaysian proceeding, Razak attempts to use United States courts and criminal procedure as both a sword and a shield, seeking to take advantage of discovery rules while attempting to avoid submitting himself to United States jurisdiction. And he attempts to do so without a reasonable legal basis. This should not be permitted, and the Motion to Intervene should be denied.

II.  Denial of the Motion to Intervene is Appropriate Based on the Protective Order and the Nature of Razak's Request

Razak relies on the arguments included in the defendant's March 12 letter, see ECF No. 64 (the "March 12 Letter"), to justify his Motion to Intervene. See ECF No. 65 at 1-2. For many of the reasons noted in the government's March 17, 2021 filing, see ECF No. 68, the March 12 Letter does not provide an appropriate basis for relief. Given the importance of validly issued protective orders, Razak's request should be denied.

"Rules authorizing discovery . . . are a matter of legislative grace." United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984)). In criminal cases, discovery is governed, principally, by Rule 16 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 16. Rule 16(d)(1) authorizes district courts to regulate discovery through protective orders, and it provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

The Supreme Court has long approved protective orders under this Rule, directing that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." Alderman v. United States, 394 U.S. 165, 185 (1969). The power to enter appropriate protective orders is "necessary" because a district court may be called upon to "[c]ontrol . . . abuses." Advisory Committee Notes to Fed. R. Crim. P. 16(d).

There are numerous considerations that a court may consider when entering a protective order, including "the safety of witnesses and others," "a particular danger [of] perjury or witness intimidation," and "the protection of business enterprises from economic reprisals." Id.; see also United States v. Figueras, 2009 WL 1364640, at *1-2 (W.D.N.Y. May 14, 2009) (protective order for identity of confidential informants); United States v. Garcia, 406 F. Supp. 2d 304, 306-07 (S.D.N.Y. 2005) (entering protective order governing defendants' access to and disclosure of Jencks Act material). Protective orders are also appropriate where the "confidentiality and privacy interests" of third parties would be negatively affected by the disclosures. United States v. O'Keefe, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007); see also United States v. Luchko, 2007 WL 1651139, at *7 (E.D. Pa. June 6, 2007) (protective order entered because of, among other reasons, personal privacy interests of third parties).

[redacted]

Here, the Court entered the protective order in this matter (the "Protective Order") pursuant to Rule 16, and it has governed the production and review of discovery throughout this case. That Protective Order was supported by good cause when the Court entered it (with the consent of both parties), and there is no contention that good cause no longer exists. As set forth in the government's March 17, 2021 filing and explained at the March 23, 2021 status conference, the March 12 Letter violated the Protective Order's clear terms. See ECF No. 68 at 1-2. These terms require, among other things, that the defendant and/or his counsel must first seek the government's agreement to discuss or disclose Discovery Materials;[3] in the absence of an agreement, they may then seek leave of this Court to do so, with notice and an opportunity for the government to object. ECF No. 26 ¶ 7. Not only did the filing of the March 12 Letter on the public docket, without notice, violate the Protective Order's procedures, but the letter (inaccurately) described the Discovery Materials as containing evidence that was "exculpatory" as to Razak and "consistent with his stated defense." See ECF No. 64 at 2-3. As Razak acknowledges, the Protective Order bars the defendant and his counsel from discussing or describing the Discovery Materials, see ECF No. 65 at 1,[4] but that is precisely what they did. That violation should not be compounded by permitting Razak to intervene in this case and access the materials under the Protective Order.

The Protective Order must remain in effect and the Court should reject Razak's attempt to undermine it. Razak seeks to intervene in order to join the defendant's request that this Court "modify its Protective Order to allow [Ng's counsel] to provide the judge in [Razak]" with evidence that is purportedly "exculpatory" as to Razak. ECF No. 65 at 1. As an initial matter, the government disputes the assertion that it has provided any Discovery Materials that are "exculpatory" as to Razak. Moreover, despite the government's requests for information, Ng's counsel has refused to inform the government what evidence Ng's counsel now alleges is "exculpatory" as to Razak.[5] Thus, even assuming that there is a good-faith disagreement

---

[3] All capitalized terms not otherwise defined herein are defined in reference to the Protective Order.

[4] See also ECF No. 26 ¶¶ 2-3 (the Protective Order stating that the Discovery Materials "may be used . . . only for the purposes of defending against the charges in [United States v. Ng]," and that Defense Counsel may not "disclose[], disseminate[] or discuss[]" the Discovery Materials or any derivative materials with "any individuals, organizations, or other entities").

[5] Razak has explained that he "seeks evidence that 1MDB and Malaysian government officials made their own corrupt arrangements with Jho Low and Mr. Leissner, without [Razak's] participation," calling this "crucial to [his] defense" in the Malaysian proceedings. ECF No. 65 at 2. First, evidence of this nature, to the extent it exists, would not be exculpatory; if Low and Leissner, both of whom have been charged in connection with this case, engaged in certain illegal conduct without Razak's participation, such evidence would not so much

regarding certain of the Discovery Materials, there is no limiting principle that would govern the material Ng seeks to disclose under the proposed "modification."[6]  The Court must therefore reject Ng's request to modify the Protective Order and deny the Motion to Intervene.

As the Second Circuit has underscored, protective orders serve a vital function in litigation.  See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 247 (2d Cir. 2018) (citing S.E.C. v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001)).  In Kiobel, a foreign litigant sought documents that were subject to a protective order limiting their use to specific U.S. litigations.  See Kiobel, 895 F.3d at 241-43.  After the U.S. litigations ended, the foreign litigant—who, unlike Razak, was party to the prior U.S. litigations and the protective order—sought the U.S. documents for use in foreign litigation.  See id.  Reversing the district court's grant of disclosure, the Second Circuit underscored the importance of the protective order that barred such disclosure, explaining that modifying the pre-existing protective order "would be perilous" in part because it would "undermine the confidence in protective orders" that helps encourage broader disclosures in litigation.  Id. at 247.

Given the compelling interests that justify Rule 16 protective orders in criminal cases, granting Razak's request to amend the Protective Order in this criminal case to which he is not even a party would be just as "perilous" as the request rejected by the Circuit in Kiobel, if not more so.  The Protective Order has facilitated the production of millions of pages of information to Ng, including the early production of material that, pursuant to the Jencks Act, 18 U.S.C. § 3500 et seq., would not have been turned over until trial.  With the benefit of the Protective Order, the government has been able to make these disclosures to the defendant with full assurance that such disclosure would not imperil the "safety of witnesses and others" or create the "particular danger[s] [of] perjury or witness intimidation" that protective orders are specifically designed to mitigate.  See Advisory Committee Notes to Fed. R. Crim. P. 16(d).  Accordingly, Razak's requests to intervene and modify the Protective Order should be denied.

---

exculpate Razak as it would simply confirm Low and Leissner's own roles in the scheme.  Second, although Razak claims that he would be entitled to such evidence under Rule 16 and Brady "were [he] being tried in Brooklyn, USA and not Kuala Lumpur"—an assertion the government contests—the key point is that he is not on trial in this Court, but rather in Malaysia.  Razak is a foreign litigant who seeks to leverage United States criminal discovery practice to obtain materials for a foreign proceeding.  Any suggestion of an entitlement to discovery based on United States law should therefore be rejected.

[6] For example, certain of the Discovery Materials have been provided to the defendant as "Attorneys' Eyes Only," and as such can only be reviewed by U.S. Citizen defense counsel and staff and may not be disseminated even to the defendant until two weeks before trial.  See ECF No. 26 ¶¶ 16-18.  Any argument that Razak should receive materials to which the defendant in this case is not yet entitled is without merit.

5

The proper mechanism for Razak to seek discovery is not intervention and modification of the Protective Order, but rather the Section 1782 motion pending in Razak.[7] Razak practically concedes as much, stating that he is moving to intervene in order to obtain "the very type of material [he] seeks through his Section 1782 petition." ECF No. 65 at 1. By moving this Court to intervene, he is simply attempting to get a second bite at the discovery apple, an allowance for which there is no legal or factual basis.

Finally, Razak's conclusory assertion that the Motion to Intervene should be granted because Magistrate Judge Parker "ought to be made aware of the precise character" of the Discovery Materials does not hold water. ECF No. 65 at 2. Magistrate Judge Parker is well positioned to decide the government's motion to intervene and stay based on the submissions of the parties and the subpoenas at issue which, notably, are directed to Leissner and Goldman Sachs, and not to the United States government. The merits of that motion would not be altered by any of the Discovery Materials produced to date. Thus, the Court should reject Razak's argument that modification of the Protective Order is appropriate in order to provide Magistrate Judge Parker with the Discovery Materials alleged to be "exculpatory" by Ng's counsel.

III.     Denial of the Motion to Intervene Is Appropriate[8]



---

[7] As the government has repeatedly stated in filings in this Court and in Razak, it has not moved to quash Razak's subpoenas, but to stay those proceedings until the resolution of the pending criminal cases in this Court.

[8] These arguments are explained in more detail in the version of the government's memorandum of law in support of its motion to intervene and stay that was filed under seal and ex parte in the Razak matter. As previewed in its March 17, 2021 letter, see ECF No. 68 at 1 n.1, the government sought authorization from Magistrate Judge Katharine Parker to provide this Court with unredacted versions of this document and the other memoranda the government filed under seal and ex parte in the Razak matter (the "Razak Sealed Documents"), with the provision that the Razak Sealed Documents would also be maintained under seal and ex parte in this matter. See Razak Dkt. No. 45. Judge Parker granted that request on March 22, 2021. See Razak Dkt. No. 46. Accordingly, the government will provide the Razak Sealed Documents directly to the Court, which should be maintained under seal and ex parte in this matter.





For the foregoing reasons, the government respectfully requests that the Court deny the Motion to Intervene.[9]

                    Respectfully submitted,

                    MARK J. LESKO
                    Acting United States Attorney

By:    /s/
        Alixandra E. Smith
        Drew G. Rolle
        Dylan A. Stern
        Assistant U.S. Attorneys
        (718) 254-7000

        /s/
        Jennifer E. Ambuehl
        Nikhila Raj
        Trial Attorneys
        Criminal Division, Money Laundering and
        Asset Recovery Section
        U.S. Department of Justice

        /s/
        David Last
        Trial Attorney
        Criminal Division, Fraud Section
        U.S. Department of Justice

cc:    All Counsel of Record (by ECF)

---

[9] The government has filed certain portions of this letter under seal and ex parte, and respectfully submits that they should remain under seal and ex parte as those portions discuss ███████████████████████████████████████