F. #2016R00467

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

NG CHONG HWA,
       also known as "Roger Ng,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 18-CR-538 (S-1) (MKB)

THE GOVERNMENT'S MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANT ROGER NG'S MOTIONS *IN LIMINE*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.      The Defendant's Motion for a Pre-trial Hearing to Determine the Admissibility of
        Purported Co-Conspirator Statements Should Be Denied ................................................. 1

        A.   Legal Standard ................................................................................................... 2

        B.   Discussion ........................................................................................................ 4

II.     The Defendant's Motion for an Order Directing the Government to Provide a Witness
        List Six Weeks Before Trial Should Be Denied ................................................................. 8

III.    The Defendant's Motion for an Order Directing the Government to Provide an Exhibit
        List Four Weeks Before Trial Should Be Denied ............................................................. 11

CONCLUSION ..................................................................................................................... 13

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in response to the defendant Roger Ng's motions in limine.  See ECF No. 89 ("Ng Br.").  The defendant moves for: (i) a pre-trial hearing pursuant to Federal Rule of Evidence 104 ("Rule 104") to determine the admissibility of co-conspirator statements; (ii) an order directing the government to provide a preliminary witness list six weeks before trial; and (iii) an order directing the government to provide a preliminary exhibit list four weeks before trial.

For the reasons set forth below, the government respectfully submits that the defendant's motions are without merit and should be denied.[1]

## ARGUMENT

I.    **THE DEFENDANT'S MOTION FOR A PRE-TRIAL HEARING TO DETERMINE THE ADMISSIBILITY OF PURPORTED CO-CONSPIRATOR STATEMENTS SHOULD BE DENIED**

The defendant moves pursuant to Rule 104 for a pre-trial hearing to determine the admissibility of co-conspirator statements that the government will seek to admit under Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)").  This motion should be denied.  The defendant's request is at odds with this Court's own well-settled practice, and the practice of courts throughout the Second Circuit, to determine the admissibility of co-conspirator statements

---

[1]    The government assumes the Court's familiarity with the facts, which are set forth, among other places, in the government's motions in limine and are hereby incorporated by reference.  See ECF No. 90 ("Gov't Br.") at 2-9.  In addition, the government has redacted limited portions of this memorandum (the "Redacted Information") for the same reasons set forth in the government's motions in limine and letter filed on November 3, 2021, see Gov't Br. at 1 n.1, and requests that the Court make findings that public disclosure of the Redacted Information implicates sufficient "higher values" that warrant sealing.  United States v. Alcantara, 396 F.3d 189, 199 (2d Cir. 2005).

at trial.  Indeed, the Second Circuit has repeatedly and explicitly rejected identical requests for pre-trial hearings to determine the admissibility of co-conspirator statements.

### A.   Legal Standard

The well-established practice in the Second Circuit is to follow the Geaney protocol:  the government may conditionally admit co-conspirator statements at trial "subject to the later submission of the necessary evidence" to meet the requirements of Rule 801(d)(2)(E).[2] United States v. Tracy, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969)); see also United States v. Cambindo Valencia, 609 F.2d 603, 630 (2d Cir. 1979) ("The law is well settled within this circuit that declarations that are otherwise hearsay may nevertheless be provisionally admitted, subject to connection of the defendant with the conspiracy alleged, as long as the trial court is ultimately satisfied that the participation of the defendant against whom the declaration is offered has been established by a fair preponderance of the evidence independent of the hearsay utterances."); United States v. Fallas, 09-CR-342 (LAP), 2010 WL 3468605, at *4 (S.D.N.Y. Aug. 19, 2010) (rejecting defendant's request for a pre-trial hearing because "[i]n the Second Circuit, statements proffered into evidence as co-conspirator statements are admitted on a conditional basis . . .").  "If the government succeeds in persuading the court that the conditionally admitted coconspirator statements were made during and in furtherance of a conspiracy . . . the statements are allowed to go to the jury." Tracy, 12 F.3d at 1199.

At the time that an admissibility determination is made, the Court "must find two factors by a preponderance of the evidence:  first, that a conspiracy existed that included the

---

[2]     The government articulated the standard for admissibility under Rule 801(d)(2)(E) in its motions in limine.  See Gov't Br. at 69-70.

defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). "The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." Id. Statements that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or to inform each other as to the progress or status of the conspiracy" are admissible. Id. (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 959 (2d Cir. 1990)). Moreover, the "[g]overnment need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy." United States v. Paredes, 176 F. Supp. 2d 183, 187 (S.D.N.Y. 2001). Indeed, a communication "with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the plan's goals" is admissible. Id.

"[W]hile the hearsay statement may be considered in establishing the existence of the conspiracy, 'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" Gigante, 166 F.3d at 82 (quoting United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996)). This requirement that there be "some independent corroborating evidence," however, does not require that the government establish fully that an individual is a co-conspirator before admitting statements of such co-conspirator. Such a requirement would swallow the hearsay exception because it is often the communications among individuals that fully establish the scope, nature and duration of the conspiracy. Rather, there must simply be "some independent corroborating evidence of the defendant's participation in the conspiracy," and the totality of the evidence—both the independent corroborative evidence and the hearsay statements themselves—must be considered when the Court determines whether a particular individual is a co-conspirator. Id. at 82 (emphasis added) (quoting Tellier, 83 F.3d at 580).

B.    **Discussion**

The defendant urges this Court to dispense with the well-established <u>Geaney</u>

protocol and order the government, in advance of trial, to identify and litigate the admissibility of

all co-conspirator statements prior to any evidence or testimony being introduced at trial.  <u>See</u> Ng

Br. at 1-14.  The Court should deny this request.

As noted above, pre-trial Rule 104 hearings regarding co-conspirator

statements—often called "<u>James</u> hearings" after <u>United States v. James</u>, 590 F.2d 575, 582 (5th

Cir. 1979)—are not held in the Second Circuit.  In case after case, courts have denied requests

for such hearings.  <u>See, e.g.</u>, <u>United States v. Freedman</u>, 18-CR-217 (KMW), 2019 WL 5387866,

at *2 (S.D.N.Y. Oct. 22, 2019) ("'The proper procedure is to determine the issues surrounding

admissibility (the existence of the conspiracy, a particular defendant's role, whether the

statements were made in furtherance of the conspiracy) during the trial, and, if necessary, outside

the presence of the jury.'" (quoting <u>United States v. Aguirre-Parra</u>, 763 F. Supp. 1208, 1217

(S.D.N.Y. 1991))); <u>United States v. Lopez</u>, 18-CR-736 (NSR), 2019 WL 4733603, at *7

(S.D.N.Y. Sept. 27, 2019) (declining to hold a <u>James</u> hearing "given the clear Second Circuit

law"); <u>United States v. Loera</u>, 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7,

2018) (denying motion for pre-trial hearing on the admissibility of co-conspirator statements in

part because "the hearing defendant requests would likely replicate the evidence presented at

trial"); <u>United States v. Hempstead</u>, 15-CR-117 (VAB), 2017 WL 401938, at *1 (D. Conn.

Jan. 30, 2017) (noting that the Second Circuit has "rejected the <u>James</u> hearing approach");

<u>United States v. Parris</u>, 13-CR-17 (DAB), 2014 WL 2745332, at *16 (S.D.N.Y. June 17, 2014)

(denying "a pre-trial hearing regarding the existence of a conspiracy and regarding the

admissibility of coconspirators' statements pursuant to [<u>James</u>]" and noting that "[i]t is well-

established . . . that the Second Circuit does not follow <u>James</u>"); <u>United States v. Miller</u>, 12-CR-

4

368 (PAC), 2012 WL 4791992, at *4 (S.D.N.Y. Oct. 9, 2012) (denying a <u>James</u> hearing and

explaining that it "is not the standard [in this Circuit]"); <u>United States v. Vondette</u>, 248 F. Supp.

2d 149, 164 (E.D.N.Y. 2001) ("[C]ase law establishes that there need not be a hearing to

determine the existence of a conspiracy and the admissibility of co-conspirators' statements.");

<u>United States v. Feola</u>, 651 F. Supp. 1068, 1129-30 (S.D.N.Y. 1987) ("In this Circuit, the

functional equivalent of what the Fifth Circuit calls a <u>James</u> hearing . . . is provided only during

trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a

motion to strike at the close of the Government's case . . . . Defendants who want <u>James</u> hearings

should so conduct their business as to be tried in the Fifth or Eleventh Circuits."), <u>aff'd</u>, 875 F.2d

857 (2d Cir. 1989).

   That is for good reason.  As courts denying these requests have observed, such

hearings would require the district court to "undertake a mini-trial" of all of the evidence in the

case—as the question of whether an individual is a co-conspirator requires a review of all the

relevant evidence admitted at trial—which would result in "significantly prolonging the

proceedings in the case and affording the defendant[] a complete preview of the government's

evidence."  <u>United States v. Ianniello</u>, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985), <u>aff'd</u>, 808 F.2d

184 (2d Cir. 1986); <u>accord</u> <u>United States v. Davis</u>, 06-CR-911 (LBS), 2009 WL 1098477, at *5

(S.D.N.Y. Apr. 21, 2009).  Indeed, the defendant himself acknowledges that "Rule 104 hearings

to determine the admissibility of co-conspirator statements are not ordinarily held in trial courts

in the Second Circuit," Ng Br. at 1, and the defendant has failed to cite a single instance when a

court in this Circuit held such a hearing.  <u>See also</u> <u>id.</u> at 6-7 ("The defense acknowledges that

Courts in this Circuit typically do not actually resolve the admissibility of purported co-

conspirator statements when offered, but instead admit the statements – statements that may well

5

not be admissible evidence – subject to being 'connected up' by the Government at some point before the close of the Government's case."). There is no reason for this Court to break with this long-established precedent, and the defendant's request should be denied.

The defendant makes two arguments why the Court should discard its standard practice and the standard practice in this Circuit: (1) many of his alleged co-conspirators reside outside of the United States, and (2) he "believes strongly" that statements produced to him in discovery do not satisfy the co-conspirator's statement exception. Ng Br. 3, 9-10. These arguments are unpersuasive and provide no reason to depart from this Circuit's well-established precedent.

The international scope of the charged scheme is a feature of cases routinely charged and tried in this district and has not previously been found to warrant the hearing sought by the defendant. In Loera, for example, the defendant, Joaquin "El Chapo" Guzman Loera, ran a 25-year continuing criminal enterprise spanning numerous countries and countless co-conspirators; yet, citing the standard practice in the Second Circuit, Judge Cogan denied his request for pre-trial determination of the admissibility of co-conspirator statements. Loera, 2018 WL 2744701, at *6 ("The Court sees no reason to deviate from [the Geaney] procedure here, where the presentation at the hearing defendant requests would likely replicate the evidence presented at trial."). Moreover, here, the government provided the defendant with the names of co-conspirators almost two years ago, giving him ample opportunity to identify their statements in discovery and prepare his defenses and objections to them.

Similarly, the fact that the defendant may object to certain co-conspirators' statements is no different than any other conspiracy case, and it does not warrant dispensing with the standard practice of dealing with these objections at trial. The defendant fails to identify

anything unique about the co-conspirator statements in this case.  In addition, permitting such a hearing in advance of trial would essentially function as a full preview of the government's evidence, something to which the defendant is not entitled.  See Davis, 2009 WL 1098477, at *5 (explaining an admissibility ruling during trial is preferable to a James hearing because a James hearing gives the defendants a "complete preview of the government's evidence"); see also United States v. Cherico, 08-CR-786 (CM), 2011 WL 4347178, at *2 (S.D.N.Y. Sept. 13, 2011) ("It is well-established that the Government has no obligation to turn over co-conspirator statements, unless they qualify as Brady or Giglio material: discovery of statements by alleged co-conspirators that the Government will seek to introduce pursuant to Fed. R. Evid. 801(d)(2)(E) is not required." (internal quotation marks omitted)); United States v. Trochelmann, 98-CR-1276 (JFK), 1999 WL 294992, at *4 (S.D.N.Y. May 11, 1999).  ("It is well settled [in this circuit] that co-conspirator statements are not discoverable under Fed. R. Crim. P. 16(a) and (c) (governing governmental disclosure), and that such statements are not considered 3500 material under the Jencks Act.").

Finally, the fact that the government's motions in limine previewed a limited number of the co-conspirator statements it intends to introduce at trial pursuant to Rule 801(d)(2)(E), see Gov't Br. at 11-18, 66-72, does not mean that a pre-trial hearing addressing all co-conspirator statements is required.  The statements addressed in the government's motions were made by three co-conspirators—███████████████████████████ ████████████████████████████████████—whose roles in the charged conspiracies are not discussed in the indictment.[3]  The government included those

---

[3]     Of the three, only ███████████ is referenced in the indictment, and ██ is mentioned only once as the "relative of the defendant" who was the beneficial owner of the Silken Waters / Victoria Square Account, the shell company account into which the defendant received criminal proceeds of the scheme.

statements in its motions so that it could preview for the Court the trial evidence (which has not previously been detailed) that will demonstrate that these three individuals are in fact co-conspirators, and permit the Court to determine the likely admissibility of this set of co-conspirator statements prior to trial, subject to connection.

The Court should therefore deny the defendant's request for a pre-trial hearing concerning the admissibility of potential co-conspirator statements because it is contrary to the well-settled protocol in the Second Circuit, is inappropriate based on the facts of this case and is burdensome and unnecessary.

## II.   THE DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO PROVIDE A WITNESS LIST SIX WEEKS BEFORE TRIAL SHOULD BE DENIED

The defendant argues that this Court should order the government to "provide defense counsel with a witness list at least six weeks before trial."  Ng Br. at 14.  This motion should be denied.

"'The prosecution has no general duty to disclose the identity of its witnesses who will testify against defendants in advance of trial,' nor does Federal Rule of Criminal Procedure 16 require the government to provide a list of its anticipated witnesses prior to trial." United States v. Barret, 824 F. Supp. 2d 419, 457 (E.D.N.Y. 2011) (quoting United States v. Rivera, 09-CR-619 (SJF), 2010 WL 1438787, at *4 (E.D.N.Y. Apr. 7, 2010)); see also United States v. Russo, 20-CR-023 (DLI), 2021 WL 1723250, at *5 (E.D.N.Y. Apr. 30, 2021) (explaining that there is no requirement that the government disclose the identity of its witnesses before trial).  Indeed, Congress has resisted efforts to amend Rule 16 to compel parties to disclose prospective witnesses' names.  The conference report accompanying the 1975 amendments to the criminal rules states:

8

> A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial.  Discouragement of witnesses and improper contacts directed at influencing their testimony, were deemed paramount concerns in the formation of this policy.

United States v. Cannone, 528 F.2d 296, 300 (2d Cir. 1975) (quoting 121 Cong. Rec. H. 7683 (daily ed. July 28, 1975)).

Nevertheless, courts retain discretion to order the disclosure of witnesses' names prior to trial.  See Cannone, 528 F.2d at 298; United States v. Failla, 93-CR-294 (CPS), 1993 WL 547419, at *9 (E.D.N.Y. Dec. 21, 1993) ("[T]he law is well settled that a defendant is not entitled to a witness list . . . although the [c]ourt has the authority to order such a list in appropriate circumstances.").  Before any such disclosure is ordered, however, the defendant must make "a specific showing that the disclosure was both material to the preparation of [his] defense and reasonable in light of the circumstances surrounding the case."  United States v. Bejasa, 904 F.2d 137, 139-40 (2d Cir. 1990) (emphasis in original).  This "specific showing" is not satisfied by "an abstract, conclusory claim that such disclosure [is] necessary."  Cannone, 528 F.3d at 301-02; see also Russo, 2021 WL 1723250, at *5; United States v. Mohamed, 148 F. Supp. 2d 232, 247 (E.D.N.Y. 2015).

Based on the specific circumstances here, it is not appropriate to require the government to disclose its witness list six weeks in advance of trial.  The Court previously "urge[d] the Government to consider disclosing all Section 3500 material to counsel and Ng at least six weeks or as soon as practicable in advance of trial."  ECF No. 83 at 159.  Thus, the Court has already declined to set a firm deadline for analogous disclosures.  Moreover, pursuant to the Court's suggestion, the government will endeavor to produce Section 3500 material—

which will provide the defendant with insight as to potential witnesses—well in advance of trial.[4]
And, as noted above, the government has already provided the defendant a list of
co-conspirators.  An order compelling disclosure of a witness list six weeks in advance is
therefore both impractical and unnecessary.

Moreover, the defendant's attempt to articulate a "specific showing" why
disclosure is required on the proposed timeline is lacking.  Although the defendant was charged
following "a global investigation with witnesses located in several foreign countries," Ng Br. at
16, this is not a reason to compel a witness list disclosure six weeks before trial, see, e.g.,
Mohamed, 148 F. Supp. 2d at 246-47 (denying motion for early disclosure of a witness list
where the defendant argued that "the charged crimes took place long ago and on a different
continent, making investigation difficult and costly"); United States v. Sezanayev, 17-CR-262
(LGS), 2018 WL 2324077, at *8, *10 (S.D.N.Y. May 22, 2018) (denying defense motion for a
witness list prior to trial where the defendant noted his desire to conduct "significant
investigation here and abroad").  In addition, the defendant's assertion that "[t]here is no reason
to believe that early production of the witness list will deter witnesses from testifying at trial,"
Ng Br. at 16, is without basis.

Nonetheless, the government recognizes the significant volume of discovery in
and relative complexity of this case.  Although the law is clear that pre-trial disclosure is not
required, the government will provide its proposed witness list to the defendant sufficiently in
advance to allow counsel to prepare adequately and promote an efficient trial.  If the Court
permits, we will discuss a specific schedule with defense counsel directly and advise the Court of
any agreed-upon proposed schedule.  And, in any event, the government will timely produce its

---

[4]     In fact, the government made an initial production of Section 3500 material on
November 19, 2021, more than two months before the trial is scheduled to begin.

proposed witness list at the appropriate date and time ordered by the Court, which the government submits is significantly less than the six weeks in advance of trial proposed by the defendant.

### III. THE DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO PROVIDE AN EXHIBIT LIST FOUR WEEKS BEFORE TRIAL SHOULD BE DENIED

The defendant has also requested that the Court order that the government "provide counsel with a list of the documents it will use in its case in chief" four weeks in advance of trial.  Ng Br. at 17.  This motion should be denied as well.

As an initial matter, the government has no legal obligation to identify its trial exhibits this far in advance of trial.  See, e.g., United States v. Russo, 483 F. Supp. 2d 301, 309 (S.D.N.Y. 2007) (noting that Rule 16 "does not require designation of trial exhibits within any particular timeframe").  Additionally, the government has not yet identified for itself every exhibit it intends to use at trial, and to the extent that it has identified potential trial exhibits, many of them are highlighted in its motions in limine.  See generally Gov't Br.  Moreover, the government has assiduously satisfied its Rule 16 obligations and, in doing so, has given the defendant months, if not years, to identify key documents for trial.  Finally, the Superseding Indictment and the government's other filings provide the defendant with detailed information about the defendant's schemes and the conduct charged.  All of this information should allow the defendant to efficiently and effectively review the discovery in preparation for trial.

In financial fraud cases in this district, it is the government's standard practice to produce its exhibits approximately two weeks before the start of trial.  In certain instances, courts have ordered that disclosure be made closer to, or further in advance of, jury selection and trial. See, e.g., United States v. Bandfield, et al., No. 14 Cr. 476 (ILG) (14 days in a case charging securities fraud/conspiracy, Klein conspiracy, and money laundering); United States v. Winick,

et al., No. 13 Cr. 452 (ENV) (17 days in a case charging securities fraud/conspiracy, wire fraud/conspiracy, obstruction, false statements, and false impersonation); United States v. Faibish, No. 12 Cr. 265 (ENV) (18 days in a case charging bank fraud, bank and securities fraud conspiracy, and false statements to the SEC); United States v. Russell, et al., No. 10 Cr. 968 (DLI) (10 days in a case charging wire and securities fraud/conspiracy).

The cases cited by the defendant in his brief—the most recent of which is nearly twenty years old—do not support a conclusion that the government should be compelled to provide its trial exhibits four weeks in advance of trial.  Specifically, United States v. Upton, 856 F. Supp. 727 (E.D.N.Y. 1994) and United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978), which the defendant cites in support, see Ng Br. at 17, have subsequently been criticized as having been erroneously decided as a result of a mistake in the interpretation of precedent and failing to provide adequate support for their holdings.  See United States v. Nachamie, 91 F. Supp. 2d 565, 569-70 (S.D.N.Y. 2000) (holding that Rule 16 does not authorize the early designation of trial exhibits).  And the third case cited by the defendant, United States v. McDonald, 01-CR-1168 (JS), 2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002), relies on Upton and Turkish.  See id. at *1-3.  These inapposite cases do not provide a basis for the order the defendant seeks.

In light of the foregoing, the defendant's request for an exhibit list four weeks in advance of trial should be denied.  Nonetheless, the government, with the Court's permission, will endeavor to agree with defense counsel on an appropriate timeline for disclosure of a proposed exhibit list and commits to providing a proposed exhibit list at a reasonable time in advance of trial, consistent with both precedent and the specific circumstances of this case.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendant's motions in limine are without merit and should be denied in their entirety.

Dated:      Brooklyn, New York
            November 22, 2021

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                            By:      _____/s/_____
                                        Alixandra E. Smith
                                        Drew G. Rolle
                                        Dylan A. Stern
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

                                        DEBORAH L. CONNOR
                                        Chief, Money Laundering & Asset Recovery Section
                                        Criminal Division
                                        U.S. Department of Justice

                            By:      _____/s/_____
                                        Jennifer E. Ambuehl
                                        Nikhila Raj
                                        Trial Attorneys

                                        JOSEPH BEEMSTERBOER
                                        Acting Chief, Fraud Section
                                        Criminal Division
                                        U.S. Department of Justice

                            By:      _____/s/_____
                                        Brent Wible
                                        Trial Attorney

13