UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

- against -

NG CHONG HWA *also known as* ROGER NG,

                    Defendant.
---------------------------------------------------------------

**ORDER**
18-CR-538 (MKB)

MARGO K. BRODIE, United States District Judge:

On February 8, 2022, Bloomberg L.P., the publisher of Bloomberg News ("Bloomberg"), filed a request that the Court "grant Bloomberg's reporter, Patricia Hurtado, access to *voir dire* and related proceedings" in this case. (Letter dated Feb. 8, 2022 (the "Letter") 1, Docket Entry No. 133.) Although Bloomberg filed this request after jury selection had already concluded,[1] Bloomberg noted that it was also seeking "to ensure that Ms. Hurtado is permitted to be physically present for live proceedings." (*Id.* at 1 n.1.) The Court therefore understands Bloomberg to be requesting that Ms. Hurtado or, "if more press representatives arrive as the trial progresses," a single pool reporter be permitted to cover future proceedings from within the courtroom. (*See id.* at 3 n.2.) For the reasons discussed below, the Court denies Bloomberg's request.

"The COVID-19 pandemic has posed unique challenges to the work of this Court, as it has to courts around the country." Memorandum at 1, *United States v. Kelly*, No. 19-CR-286 (E.D.N.Y. July 28, 2021), Docket Entry No. 140. Despite these challenges, the Eastern District

---

[1] Bloomberg filed this request at approximately 7:08 PM, over an hour after jury selection concluded.

of New York (the "Court") has resumed certain in-person proceedings, including trials, and has taken several steps to ensure the safety of the public and courthouse personnel.[2] To ensure everyone's continued safety, the Court consults with an epidemiologist regularly, and based on the guidance of the epidemiologist, the Court has issued a series of Administrative Orders and implemented safety measures in the courthouse, including temperature checks, symptom screening, a mask requirement, and social distancing, as well as a vaccination mandate for court employees.[3] In addition, the Court has reconfigured Courtrooms, for example, by installing plexiglass and HEPA filters and by spacing jurors in the gallery rather than in the jury box to ensure six-foot distancing between each juror. The Court also utilizes a second courtroom for jury deliberations to ensure proper spacing of jurors while they deliberate. Because the jury now utilizes the entire gallery of the courtroom previously occupied by the public, there is no room for the public in the gallery, and it would be "inappropriate to seat the jurors with members of the public, including reporters, even if there were adequate space." *Id.* at 2.

Despite the lack of space in the courtroom due to COVID-19 safety protocols, the Court has nevertheless preserved the right of access to criminal trials by establishing an overflow room with monitors, which will display a live video and audio feed of the proceeding. Although Bloomberg "do[es] not accept that the overflow room is an adequate substitute" for viewing the proceedings in person, citing "technical issues" that made the video feed temporarily unavailable

---

[2] *See Fourteenth Amendment of Administrative Order 2020-26 and Further Temporarily Suspending Some In-Person Proceedings*, Administrative Order No. 2022-02, at 3 n.4 (Jan. 27, 2022) (noting that "[i]n-person proceedings that remain suspended pursuant to Administrative Order 2020-26, as amended, include all civil proceedings other than jury selections, trials, and bench trials, as well as arraignments, detention hearings, preliminary hearings, and pre-indictment proceedings").

[3] *See Revised Restrictions on Entry to Courthouses of the Eastern District of New York*, Administrative Order No. 2020-22 (Aug. 5, 2020).

during the introductory remarks to jury selection and the fact that "the camera is fixed on one spot at the front of the courtroom," (Letter 3), as Judge Ann Donnelly noted in *Kelly*, "even a seat in the courtroom does not guarantee that there never will be a technical problem, or that observers will have unobstructed views of every participant in the trial." Memorandum at 2, *Kelly*, No. 19-CR-286; *see also United States v. Barrow*, No. 20-CV-127, 2021 WL 3602859, at *11 (D.D.C. Aug. 13, 2021) (rejecting the defendant's argument that his Sixth Amendment right to a public trial was violated because members of the public viewed the proceedings from an overflow courtroom and stating that, "[a]s a practical matter, a spectator viewing a trial from the courtroom gallery would not have a perfect sight line of each angle of the courtroom — let alone each individual juror"); *United States v. Babichenko*, 508 F. Supp. 3d 774, 779–80 (D. Idaho 2020) (noting that a "video feed of the proceedings will give the public a much better view of the witness testimony, exhibits, and examination, than they would have at a satellite [in-person] location").

"To the extent that this measure is a partial limit on public access, it is warranted by the [Court's] 'overriding interest' in ensuring public safety during a global health pandemic." Memorandum at 2, *Kelly*, No. 19-CR-286 (quoting *Press-Enter. Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 510 (1984)); *see also Press-Enter. Co.*, 464 U.S. at 510 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."); *United States v. Bledson*, No. 20-CR-99, 2021 WL 1152431, at *3 (M.D. Ala. Mar. 25, 2021) ("In light of the pressing health and safety concerns posed by an open trial [during COVID-19], the [c]ourt finds that it has advanced an overriding interest."). The Court has both an interest and an obligation to "[p]rotect[] the public from unnecessarily spreading a potentially fatal virus." *United States v.*

3

*Huling*, 542 F. Supp. 3d 144, 147 (D.R.I. 2021); *see also Babichenko*, 508 F. Supp. 3d at 778–79 (finding that offering a "separate viewing room to allow members of the public and the press to observe the proceeding via live video and audio feed" was warranted because "[p]rotecting the public from unnecessarily spreading a potentially fatal virus is not only a purpose the government *may* pursue; it is one it has an obligation to [pursue]" (first alteration in original) (quoting Steven E. Smith, *The Right to a Public Trial in the Time of Covid-19*, 77 Wash. & Lee Rev. Online 1, 6 (2020))).  This interest is particularly important for the jurors, who may be unvaccinated and who will be coming to the courthouse four days each week for trial, which is expected to last five to six weeks.  *See United States v. Richards*, No. 19-CR-353, 2020 WL 5219537, at *3 (M.D. Ala. Sept. 1, 2020) (excluding all in-person spectators except the defendant's family members from courtroom in light of the pandemic and stating "[t]he [c]ourt takes seriously its special responsibility to protect the members of the jury, who have proudly presented themselves during a national crisis to carry on one of the nation's most sacred civic duties").

Moreover, the measures taken by the Court — making an overflow room available to the public and the press — "are narrowly tailored to the interest in ensuring public safety, including the safety of the jurors."[4]  Memorandum at 3, *Kelly*, No. 19-CR-286.  Indeed, the Court's

---

[4] Bloomberg argues that the Court's COVID-19 safety protocols are not narrowly tailored to serve this interest because Ms. Hurtado's presence in the courtroom "would not meaningfully increase the risk of contagion," as "[t]here is ample room" for her to socially distance, she is "vaccinated, boosted and will wear a K-95 mask," and "other courts have safely admitted limited numbers of journalists to allow them to cover high-profile trials, even during surges of the disease."  (Letter 2–3.)  However, as discussed above, due to social distancing requirements, there is not ample room in the courtroom for the public.  In addition, despite Ms. Hurtado's vaccination status, the Court must take these measures to protect unvaccinated jurors.  The Court also notes that the orders entered in *United States v. Raniere*, No. 18-CR-204 (E.D.N.Y. July 19, 2021) (permitting "media representatives[] and members of the public" to

COVID-19 safety protocols are "consistent with those recommended by leading public health officials and medical experts throughout the country." *United States v. Trimarco*, No. 17-CR-583, 2020 WL 5211051, at *4 (E.D.N.Y. Sept. 1, 2020); Memorandum at 3, *Kelly*, No. 19-CR-286 (quoting *Trimarco*, 2020 WL 5211051, at *4). While the public, including the press, may not be able to view the trial from inside the courtroom because of the social distancing safety requirements, the feed in the overflow room will be in real-time. Further, "even in non-pandemic times, courtrooms are physically limited spaces; it is often the case that spectators are unable to sit in the courtroom, and must instead go to an overflow room. There is no reasonable alternative to the protocols adopted by the Court." Memorandum at 3, *Kelly*, No. 19-CR-286.

Dated: February 11, 2022
      Brooklyn, New York

SO ORDERED:

s/ MKB

MARGO K. BRODIE
United States District Judge

---

attend restitution hearing with "proof of full COVID-19 vaccination"), and *United States v. Maxwell*, No. 20-CR-330 (S.D.N.Y. Nov. 15, 2021), Docket Entry No. 463 (permitting "a number of pool reporters" in the courtroom), cited by Bloomberg, were decided prior to the emergence of the Omicron variant in the United States on December 1, 2021. (*See* Letter 3 n.3); *see also* Michael D. Shear et al., *The First Omicron Case Has Been Detected in the U.S.*, N.Y. Times (Dec. 1, 2021), https://www.nytimes.com/2021/12/01/health/omicron-first-us-case-california.html. The Court further notes that the spatial configuration of courtrooms in the Southern District of New York, where the *Maxwell* trial was held, differs from those in the Eastern District. (*See* Letter 3 n.3.)